736 So.2d 1058 (1999)
Tracy ALEXANDER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01377 COA.
Court of Appeals of Mississippi.
February 23, 1999.
*1060 Samuel H. Wilkins, Jackson, Attorney for Appellant.
Office of the Attorney General by Jolene M. Lowry, Attorney for Appellee.
BEFORE THOMAS, P.J., COLEMAN, AND DIAZ, JJ.
DIAZ, J., for the Court:
¶ 1. Tracy Alexander appeals the decision of the Rankin County Circuit Court convicting him of felony possession of marijuana. Alexander raises the following issues in his appeal: (1) whether the evidence presented at trial was sufficient to establish the crime of felony possession of marijuana under Miss.Code Ann. § 41-29-139 (Rev.1993) and whether the jury's verdict was against the overwhelming weight of the evidence, (2) whether his rights were violated under Miranda during questioning and therefore made his statement involuntary, (3) whether the circuit court erred in admitting the handgun into evidence and testimony regarding the same,(4) whether the circuit court erred in permitting the prosecution to make a "send a message" statement during closing arguments, and (5) whether the cumulative errors at the trial court level warrant a new trial. Finding no error, we affirm the ruling of the circuit court.

FACTS
¶ 2. Tracy Alexander, the defendant, was convicted of possession of more than one ounce but less than one kilogram of marijuana with intent to sell under Miss.Code Ann. § 41-29-139. Alexander was observed by a Flowood Police Department officer meeting vehicles near the property where he lived. At trial, the same officer testified that he saw Alexander hand "some type of object" into one of the vehicles. On the basis of this and information received from a confidential informant, a search warrant was obtained to search the two trailers located on the property in question. Officers then executed the search warrant and found marijuana concealed inside a cabinet above the kitchen stove.
¶ 3. Alexander was arrested and read his Miranda warnings. Although he was given a written Miranda warning during the booking procedure, he made incriminating statements about his involvement in the crime. During his trial, Alexander denied any knowledge of the presence of marijuana in the mobile home. Both the State and Alexander presented testimony that other individuals had access to the mobile home where the marijuana was found. Although defense counsel objected, the State introduced testimony of an officer regarding a loaded handgun that was registered to Alexander and recovered from underneath *1061 a pillow in a bedroom of the trailer. Later, the trial judge allowed the pistol to be introduced into evidence to show Alexander's dominion and control over the mobile home where the marijuana was found.
¶ 4. During closing arguments, the prosecutor told the jury to "send a message" that drug dealing would not be tolerated in the community. After objection to the first remark, the trial judge directed the jury to disregard the remark.
¶ 5. Thereafter, Alexander was convicted for possession of more than one ounce but less than one kilogram of marijuana with intent to sell in the Rankin County Circuit Court. He was sentenced to serve a term of eight years in the custody of the Mississippi Department of Corrections. Feeling aggrieved, he now perfects this appeal.

DISCUSSION

I. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO ESTABLISH THE CRIME OF FELONY POSSESSION OF MARIJUANA UNDER § 41-29-139 AND WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE

A. Sufficiency of the Evidence
¶ 6. A challenge to the sufficiency of the evidence requires an analysis of the evidence by the trial judge to determine whether a hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty. May v. State, 460 So.2d 778, 781 (Miss.1984). If the judge determines that no reasonable juror could find the defendant guilty, then he must grant the motion for a directed verdict and JNOV. Id. If he concludes that a reasonable juror could find the defendant guilty beyond a reasonable doubt, then he must deny the motion. Id. This Court's scope of review is limited to the same examination as that of the trial court in reviewing the motions for directed verdict and JNOV; that is, if the facts point in favor of the defendant to the extent that reasonable jurors could not have found the defendant guilty beyond a reasonable doubt, viewing all facts in the light most favorable to the State, then it must sustain the assignment of error. Blanks v. State, 542 So.2d 222, 225-26 (Miss.1989). Of course, the opposite is also true. We may reverse the trial court's ruling only where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 7. Here, legally sufficient evidence existed to find Alexander guilty beyond a reasonable doubt. The State made out is prima facie case by putting into evidence the seized marijuana and scales, $400 cash, the handgun under his pillow, four pagers, and his driver's license. All of this evidence indicated that he lived at the mobile home and exercised dominion and control over his residence. Furthermore, several police officers testified who observed the crime scene and questioned Alexander. Finally, the State submitted as evidence Alexander's incriminating statements. Since the State put forth sufficient, credible evidence, the trial judge was required to leave the final decision of guilt or innocence to the jury. We affirm the trial judge's ruling with regard to the motion for a directed verdict.

B. Weight of the Evidence
¶ 8. The next motion we will review is that for a new trial. This goes to the weight of the evidence and not its sufficiency. In reviewing this claim, this Court must examine the trial judge's denial of Alexander's motion for a new trial. Jones v. State, 635 So.2d 884, 887 (Miss. 1994). The decision of whether or not to grant a motion for a new trial rests in the sound discretion of the trial judge and should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence *1062 that failure to grant the motion would result in an unconscionable injustice. May, 460 So.2d at 781. In making the determination of whether a verdict is against the overwhelming weight of the evidence, this Court must view all evidence in the light most consistent with the jury verdict, and we should not overturn the verdict unless we find that the lower court abused its discretion when it denied the motion. Veal v. State, 585 So.2d 693, 695 (Miss.1991). The proper function of the jury is to decide the outcome in this type of case, and the court should not substitute its own view of the evidence for that of the jury's. Id. Likewise, the reviewing court may not reverse unless it finds there was an abuse of discretion by the lower court in denying the defendant's motion for a new trial. Id. Upon reviewing all of the evidence presented in the light most consistent with the verdict, we find that the trial judge did not abuse his discretion in denying Alexander's motion for a new trial. Accordingly, we dismiss this assignment of error as lacking in merit.

II. WHETHER ALEXANDER'S RIGHTS WERE VIOLATED UNDER MIRANDA DURING QUESTIONING, AND THEREFORE MADE HIS STATEMENT INVOLUNTARY
¶ 9. Alexander asserts that the trial court erred in denying his motion to suppress his statement given at the station house because he invoked his right to remain silent and did not waive his right to remain silent which violated his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Rule 1.03 of the Mississippi Uniform Criminal Rules of Circuit Court Practice requires that Miranda warnings "be given prior to any subsequent interrogation session with the person in custody even thought the warnings were previously given."
¶ 10. In Hunt v. State, 687 So.2d 1154, 1160 (1996), the Mississippi Supreme Court explained that after a preliminary hearing on a motion to suppress a statement which results in the admission of the statement, the defendant maintains a heavy burden to reverse that decision on appeal. Furthermore, such a determination is considered a finding of fact made by the trial judge sitting without a jury. Id. (citations omitted). The standard of review for determining whether it was error to admit the statement was reiterated by the Mississippi Supreme Court in Balfour v. State, 598 So.2d 731, 742 (Miss.1992): "Determining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence."
¶ 11. This Court begins its analysis of this issue by the observation that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) did not abolish confessions per se. In Miranda, the United States Supreme Court opined:
In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege [against self-incrimination] while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

Id. at 478 (emphasis added). Prosecutors may not use statements obtained during custodial interrogations unless procedural safeguards are maintained to "secure the privilege against self-incrimination." Id. *1063 at 444. Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. The initiation of questioning of the suspect who is in custody by law enforcement officers triggers the need for Miranda; therefore, if a suspect in custody initiates the conversation, that statement may be admissible as freely and voluntarily given even without prior Miranda warnings.
¶ 12. In the case sub judice, the officers testified and the defendant agreed that Miranda warnings were given to Alexander when he was arrested. After Alexander was in custody and taken to the station house for booking, he made incriminating statements regarding his drug supplier which were unsolicited and voluntary. Alexander was not being subjected to "interrogation" even though he was "in custody." Luster v. State, 515 So.2d 1177, 1179 (Miss.1987). Alexander also voluntarily stated during the booking that he lived at the trailer. Alexander was aware of his rights at that time since he had been advised of his rights at the time of his arrest. Furthermore, he did not exercise his rights to remain silent or for an attorney. Additionally, the information about whether Alexander lived in the trailer was no more than biographical information that the booking officer would have received during routine booking procedures, and therefore, these questions are "non-interrogative" within the meaning of Miranda. It is clear that Alexander was read his Miranda rights upon arrest and was in the process of being booked when he made his statement about where he lived. "Routine questions asked in booking a suspect relating to his name, age and place of birth are not proscribed by Miranda." Wesley v. State, 521 So.2d 1283, 1285-86 (Miss.1988). Accordingly, the admission of Alexanders' statements was not in violation of Miranda; therefore, this assignment of error is without merit.

III. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING THE HANDGUN INTO EVIDENCE AND TESTIMONY REGARDING THE SAME
¶ 13. The Mississippi Supreme Court has addressed the propriety of admitting evidence in cases similar to the case sub judice:
As a general rule, any physical object of visual evidence may be introduced into evidence if the objects are relevant to the facts in issue before the court. Of course, it must be first shown that such objects and articles are in some manner relevant to the issue. The rule is more liberally construed in circumstantial cases. However, the mere finding of a rifle or other articles owned or in the possession of a defendant ... wholly disconnected with the issue before the court is properly excluded from the evidence before the jury.
Lanier v. State, 291 So.2d 695, 696-97 (Miss.1974) (internal citations omitted). In other words, "[i]f the evidence has any probative value at all, the rule favors its admission." Foster v. State, 508 So.2d 1111, 1117 (Miss.1987).
¶ 14. At trial, Alexander objected to the relevancy of a loaded handgun introduced into evidence that was registered to him and found under a pillow in the bedroom of the trailer. Initially, the trial judge ruled that the handgun was inadmissible as irrelevant since it was not taken from Alexander's person. During the defendant's case-in-chief, the defendant and his witnesses testified that many people, including small children, were in and out of the trailer on the date of the offense. During rebuttal, the State sought to introduce the gun to respond to Alexander's defense that he did not have exclusive control of the premises. The trial judge ruled that the handgun was now relevant and admissible since Alexander challenged his dominion and control over the trailer and bedroom from which it was taken. The presence of the registered handgun *1064 found in the bedroom made "the existence of a fact that is of consequence to the determination of the action [that being dominion and control] more probable ... than it would be without the evidence." M.R.E. 401. Therefore, we find this assignment of error without merit.

IV. WHETHER THE CIRCUIT COURT ERRED IN PERMITTING THE PROSECUTION TO MAKE A "SEND A MESSAGE" STATEMENT DURING CLOSING ARGUMENT
¶ 15. Parties are given great latitude in closing arguments. Dunaway v. State, 551 So.2d 162, 163 (Miss.1989). The test for determining whether an improper argument by a prosecutor requires reversal is whether the "natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." Id. (quoting Craft v. State, 226 Miss. 426, 84 So.2d 531, 535 (1956)). However, prosecutors have been repeatedly cautioned to refrain from using the "send a message" argument in their arguments to the jury. Hunter v. State, 684 So.2d 625, 637 (Miss. 1996); Chase v. State, 645 So.2d 829, 854 (1994); Williams v. State, 522 So.2d 201, 209 (Miss.1988).
¶ 16. In concluding his closing argument, the prosecutor stated the following to which defense counsel objected:
There is nothing further we can do. It's up to you. It's up to you to decide are you going to let a dope dealer go back to 254 Fannin Place in Flowood and sell dope some more? Or are you going to tell him, not in our county. You might do that somewhere else, but we're not going to let you do that here. We're not going to let you turn our county into what we see all over the country. We're going to take a stand.
The trial court sustained the objection, overruled the motion for a mistrial, and directed the jury to disregard the remark by the prosecution. Immediately thereafter, the State made the same argument as his final thoughts to the jury: "Send a message to this defendant right here. Tell him, don't sell dope in our county." However, there was no objection to the second remark which is complained of now on appeal. Objections to an argument should be contemporaneous. Marks v. State, 532 So.2d 976, 984 (Miss.1988). It is too late to make objections after the argument is complete. Id. Since no objection was made to this remark, this assignment of error is procedurally barred and precludes appellate review.
¶ 17. Until now, the "send a message" remark alone has not been considered reversible error in Mississippi. Fulgham v. State, 386 So.2d 1099, 1101 (Miss. 1980). However, in light of the numerous unheeded warnings that prosecutors have received by this Court and other courts to refrain from using the "send a message" remark during closing arguments, the practice continues. Today, by order of this opinion, we condemn the use of the "send a message" argument by prosecutors and state that in the future the "send a message" remark used expressly or impliedly will alone constitute reversible error.

V. WHETHER THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVED THE DEFENDANT OF DUE PROCESS AND HIS RIGHT TO A FAIR TRIAL
¶ 18. While individual errors, not reversible in themselves, may combine to constitute cumulative error, the supreme court has held that "where there was no reversible error in any part so there is no reversible error to the whole." Coleman v. State, 697 So.2d 777, 787 (Miss.1997) (quoting McFee v. State, 511 So.2d 130, 136 (Miss.1987)). Since Alexander fails to raise any issues which contain actual error on the part of the trial court, we refuse to reverse based upon allegations of cumulative error.
¶ 19. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT *1065 OF CONVICTION OF POSSESSION OF MORE THAN ONE OUNCE BUT LESS THAN ONE KILOGRAM OF MARIJUANA WITH INTENT TO SELL WITH A SENTENCE OF EIGHT YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, C.J., AND THOMAS, P.J., AND COLEMAN, AND KING. JJ., CONCUR.
SOUTHWICK, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY BRIDGES, C.J. AND McMILLIN, P.J., AND PAYNE, JJ.
IRVING AND LEE, JJ., NOT PARTICIPATING.
SOUTHWICK, J., concurring.
¶ 20. The court holds that if a prosecutor in the future argues to the jury that it should "send a message" to criminals by its verdict, that is by itself reversible error. I believe that we should not make such a pronouncement.
¶ 21. As discussed by the majority, the supreme court has already held that the remark is error. What we apparently are adding to the law is that the remark must cause reversal. It is true that some prosecutors appear either to be unaware of, or perhaps more likely, defy precedents that hold the remark to be error. Even so, our appellate task remains to determine whether error affected a trial in such a way as to bring its fairness into question.
¶ 22. The impact of any argument by counsel should in my view remain subject to traditional analysis. Beyond that, contumacious refusal to follow precedents should be treated for what it is, contempt, and sanctions entered accordingly. If an apparently conscious prosecutor error does not require reversal under present law, an appellate court could affirm the conviction but also remand the issue of contempt for a hearing as to whether the error was wilful.
¶ 23. The supreme court has stated its view of persistent ignoring of well-known trial principles:
District attorneys must not directly, or by innuendo and insinuation, comment on a defendant's not testifying. Any person competent to be a prosecuting attorney knows that elementary principle of law. If a prosecuting attorney, who is presumed to know better, persists in making erroneous and prejudicial remarks in his argument before the jury, then the trial court should deal harshly with him to the extent of sanctions, reprimands and contempt.
Livingston v. State, 525 So.2d 1300, 1308 (Miss.1988) (footnote and citations omitted), quoting Wilson v. State, 433 So.2d 1142, 1146 (Miss.1983).
¶ 24. This indicates that the trial court itself should treat conscious ignoring of trial rules seriously and hold a hearing outside the presence of the jury on the question. If the trial court does not, then the appellate court should on its own consider whether to order that to be done.
¶ 25. If nonetheless the error requires reversal because of the effect it had on the proceedings, then the supreme court has also held that it may "assess the entire costs of a new trial to the attorney whose conduct made the trial necessary." Stringer v. State, 627 So.2d 326, 330 (Miss. 1993).
¶ 26. With these two toolscontempt hearings and assessing costs if retrials are necessaryconscious ignoring of rules in pursuit of victory can be addressed. I believe that this approach allows useful discretion that an automatic mandating of new trials would not.
BRIDGES, C.J. AND McMILLIN, P.J. AND PAYNE, J., JOIN THIS SEPARATE OPINION.