766 So.2d 787 (2000)
James FAIR, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00645-COA.
Court of Appeals of Mississippi.
August 29, 2000.
*789 M.A. Bass, Jr., Hazlehurst, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorneys for Appellee.
BEFORE McMILLIN, C.J., LEE, AND MOORE, JJ.
MOORE, J., for the Court:
¶ 1. James Fair, Jr. was indicted by a Copiah County grand jury for capital murder and conspiracy. Following a trial, the jury found Fair guilty of capital murder. The circuit court sentenced Fair to life without the possibility of parole in the custody of the Mississippi Department of Corrections. On appeal, Fair presents the following issues for our review
I. (A) THE TRIAL COURT ERRED IN ALLOWING HEARSAY EVIDENCE FROM A THIRD PARTY DISCUSSING STATEMENTS THAT THE VICTIM HAD MONEY ON HIS PERSON.
(B) THE TRIAL COURT ERRED IN ALLOWING HEARSAY EVIDENCE FROM A THIRD PARTY DISCUSSING STATEMENTS BY THE THREE DEFENDANTS AND NOT BEING ABLE TO IDENTIFY THE DEFENDANTS.
II. THE COURT ERRED IN ADMITTING EVIDENCE OF THE ALLEGED CONTENTS OF THE VICTIM'S WALLET TO BE PRODUCED TO THE JURY AND USED TO INFLAME THE BIAS AND PREJUDICE OF THE JURY.
III. THE COURT ERRED IN NOT GRANTING A DIRECTED VERDICT FOR THE DEFENDANT IN THAT THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND WAS INSUFFICIENT TO SUPPORT A VERDICT OF GUILTY.
IV. THE COURT ERRED IN ALLOWING PROSECUTORIAL MISCONDUCT AND IN FAILING TO ADMONISH THE JURY CONCERNING THE PROSECUTOR'S REFERENCE TO THE DEFENDANT AS "A KILLER" DURING CLOSING ARGUMENTS.
V. THE COURT ERRED IN SENTENCING THE DEFENDANT TO LIFE WITHOUT PAROLE IN VIOLATION OF SECTION 99-19-101(2), MISSISSIPPI CODE ANNOTATED (1972).
Finding the assignments of error to be without merit, this Court affirms.

STATEMENT OF THE FACTS
¶ 2. On September 7, 1998, Ben Tanner was dropped off at a barbeque at the Hazlehurst Villas in Hazlehurst, Mississippi. It was reported that Tanner was awaiting the return of his pickup truck. After awhile, tired of waiting on his truck, Tanner decided to leave the party on foot. Tanner was assaulted, robbed and murdered while walking down Nelson Drive from the Hazlehurst Villas.
*790 ¶ 3. Derrick Stewart, one of Fair's co-workers, testified that on the day in question, Cornell Moreland told James Fair and Carl Porter, a/k/a Carl Arnold (Porter), that he knew Tanner had some money on him and did they want to "get it off of him." Stewart testified that at that point he left the gathering and went to his apartment, having no further contact with those men that day. Stewart continued by stating that the next day, when Fair came and woke him up for work, Fair told him about the incident in question. Stewart testified that Fair told him as he was walking Tanner up the road from the barbeque the night before, Porter came up from behind and hit Tanner in the back of the head with a board, and Fair then went through Tanner's pockets. Fair had told Stewart that only he and Porter were involved.
¶ 4. Teresa Catchings, a resident of Hazlehurst Villas, testified that she was on the balcony of her upstairs apartment on the night of the barbeque, where she overheard a conversation regarding how much money a man had on him and how they were going to try "and get it off him." She further testified that she was aware that the three individuals involved in the conversation were Fair, Porter, and Moreland. However, Catchings could not identify who said what in that conversation.
¶ 5. Officer John Goza, an investigator for the Copiah County Sheriff's Department, testified that Fair, after waiving his rights, made a statement to the police on September 9, 1998. Officer Goza testified that Fair told the police he had heard Moreland and Porter talking at the barbeque about robbing Tanner. Fair had stated that later in the evening, while he was walking with Tanner up the street, Porter came up and hit Tanner over the head with a board. Officer Goza testified that in his statement, Fair stated that it was Porter who grabbed the wallet out of Tanner's pocket, and that Porter just handed him the contents of the wallet. Fair told the police the location of the contents of the stolen wallet and the weapon, which were recovered, and that his fingerprints would be on the contents of the wallet, but not on the board. Officer Goza also testified as to a statement made by Porter to the police wherein Porter admits hitting Tanner on the head with a board, but states that it was Fair who went through Tanner's pockets and retrieved the wallet.
¶ 6. Fair testified in court that on the day in question Moreland told him that he and Porter were going to rob Tanner. Fair testified that as he and Tanner were walking, he saw Porter running up behind Tanner with the board, and he told Porter not to do it. Fair also testified that it was Porter who went through Tanner's pockets, and that Porter just handed him some credit cards and other contents from the wallet. Fair denied knowing that anything was going to happen, and he testified that he did not want to be a participant in any of that night's events. In making the determination that Fair was a participant in the robbery that took place on the night of September 7, 1998, which resulted in the murder of Tanner, the jury found Fair guilty of capital murder.

LAW AND ANALYSIS

I. (A) DID THE TRIAL COURT ERR IN ALLOWING HEARSAY EVIDENCE FROM A THIRD PARTY DISCUSSING STATEMENTS THAT THE VICTIM HAD MONEY ON HIS PERSON?
¶ 7. At the trial, Derrick Stewart, a third party, testified on behalf of the State. During his testimony, he recalled a statement made by Cornell Moreland on the night in question. Stewart told the court that while at the barbeque on September 7, 1998, he was standing around with Moreland, Porter, and Fair. During their conversation, Moreland stated that he knew Tanner had some money on him and did they all want to help "get it off of him." When Stewart testified as to this statement, *791 Fair's attorney objected as to hearsay. In making his final ruling on the matter, the circuit court judge stated that the statement was not hearsay because it was not offered for the truth of the matter asserted, but to simply prove it was said. He held that it was offered to show state of mind of the declarant, and that it was part of the res gestae. Fair disagrees, asserting that the statement was inadmissible hearsay, but making no substantial argument in defense of this contention. We therefore find his argument to be without merit.
¶ 8. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c) (emphasis added). As stated above, the lower court, in determining that the statement was not being offered to prove the truth of the matter, found the statement to be admissible. In agreement with this ruling, we find the State's arguments convincing.
¶ 9. A similar ruling was found in Arnold v. State, 739 So.2d 422 (Miss.Ct.App.1999), a case dealing with check forgery. In Arnold, the defendant had paid the cashier at a grocery store, Angel King, with a check. Prior to the incident in question, a third party, Nancy Daniels, had told King "that she knew this guy [the defendant]. That she was kin to him and that at that time after we were suspicious of it we had called to see if his check was good." Id. at (¶ 11). Because of the information provided by Daniels, King had called the bank to determine whether the check the defendant had written was forged. At the trial, King began testifying as to what Daniels had told her. The testimony was objected to on hearsay grounds. The trial court allowed the statement, finding that since the testimony was offered to explain why King did what she did in response to Nancy Daniels's statement, and not for the truth of the matter, it was not hearsay. Id. at (¶ 12). In Gayten v. State, 595 So.2d 409 (Miss.1992), the supreme court explained that such statements can be offered solely for the purpose of demonstrating that they were said, and that such "statements are not assertions which are important because they are true." Id. at 414. So is the situation at hand. Moreland's statement was not offered to prove the truth of the matter, that Tanner actually had money on him, but was offered to prove that it was said and to explain the actions which lead to the robbery. The lower court did not commit error.

I. (B) DID THE TRIAL COURT ERR IN ALLOWING HEARSAY EVIDENCE FROM A THIRD PARTY DISCUSSING STATEMENTS BY THREE DEFENDANTS AND NOT BEING ABLE TO IDENTIFY THE DEFENDANTS?
¶ 10. Under this assignment of error, Fair first claims that the statement made by Teresa Catchings regarding the conversation she overheard between Moreland, Porter, and Fair, was inadmissible hearsay and should not have been admitted into evidence. However, as noted by the State, there was no hearsay objection made at the trial. Therefore, even if it were determined that this portion of the testimony was hearsay, "unobjected-to hearsay evidence, once received by the court and presented to the jury, becomes competent evidence and may aid in supporting a verdict the same as any other competent evidence." Veal v. State, 585 So.2d 693, 697 (Miss.1991). This results in a procedural bar as to the hearsay argument.
¶ 11. Although Fair does mention other vague contentions under this assignment of error, there is no cited authority in support of the arguments. According to the well established rule, the failure to cite any authority in support of assignments of error "precludes this Court from considering these issues on appeal." Grey v. Grey, 638 So.2d 488, 491 (Miss.1994). For these reasons, this assignment of error is without merit.

*792 II. DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE OF THE ALLEGED CONTENTS OF THE VICTIM'S WALLET TO BE SHOWN TO THE JURY?
¶ 12. Fair alleges that the only reason the contents of Tanner's wallet were introduced by the State was to inflame the passions and biases of the jury and to prejudice the appellant. Fair cites M.R.E. 403 in arguing that admitting the contents of the wallet into evidence was error since the probative value was substantially outweighed by the danger of unfair prejudice. In fact, Fair asserts that the contents had no probative value at all. For the reasons discussed below, this argument fails.
¶ 13. First and foremost, due to Fair's failure to make an objection as to the probative and prejudicial value of the contents of the wallet at the trial level, he is procedurally barred from raising this argument for the first time on appeal. The failure to make a contemporaneous objection bars him from raising the issue for the first time on appeal. Ferguson v. State, 739 So.2d 492 (¶ 11) (Miss.Ct.App. 1999). Irrespective of this bar, Fair still failed to demonstrate how such pieces of evidence inflamed the jury in any way.
¶ 14. Additionally, this Court finds that since Officer Goza testified that it was Fair who informed him of the location of the contents and actually took him to that location, the proper foundation for admitting the evidence had been laid, and the contents of the wallet were probative in proving that the wallet did in fact belong to the victim. The lower court did not commit error.

III. DID THE COURT ERR IN NOT GRANTING A DIRECTED VERDICT BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND WAS INSUFFICIENT TO SUPPORT A VERDICT OF GUILTY?
¶ 15. Fair argues that the evidence was insufficient to support a verdict of guilty and that the verdict was against the overwhelming weight of the evidence. Fair randomly quotes the standards for determining such and then simply states that the evidence in this case did not meet those standards. In making his argument, Fair in no way analyzes the testimony and evidence presented, therefore failing to demonstrate how the standards were not met. Regardless, this Court finds the evidence sufficient to support the guilty verdict, a verdict which was not against the weight of the evidence.
¶ 16. Motions for directed verdict and judgment notwithstanding the verdict challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). When examining the legal sufficiency of the evidence on such motions, "the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant." Norwood v. State, 741 So.2d 992 (¶ 10) (Miss.Ct.App.1999). This Court may reverse the trial court's ruling "only where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty." Davidson v. State, 734 So.2d 252 (¶ 4) (Miss.Ct.App.1999).
¶ 17. Under this standard of review and the evidence presented, this Court must affirm the lower court's denial of the motions for directed verdict and judgment notwithstanding the verdict. There was testimony that Fair was present at the time when Moreland stated Tanner had money on him and asked if anybody wanted to help "get it off of him." Stewart testified that Fair told him the day after the incident in question that as Fair was walking Tanner up the street, Porter hit Tanner on the head with a board, and then Fair went through Tanner's pockets and removed his wallet. Officer Goza testified as to the statement *793 Fair had made to the police, in which Fair admitted knowing the location of the contents of the wallet and the weapon, and that his fingerprints would be on the contents. In fact, Fair physically took the police to this location. Officer Goza also testified as to Porter's police statement, which corroborated Fair's statement. Accepting as true this evidence that is favorable to the State, it cannot be said that reasonable jurors could only have found Fair not guilty. For this reason, we must affirm the trial court's decision.
¶ 18. Motions for a new trial challenge the weight of the evidence. McClain, 625 So.2d at 781. At the trial, the decision of whether or not to grant such a motion rests in the sound discretion of the trial judge and "should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion would result in an unconscionable injustice." Alexander v. State, 736 So.2d 1058 (¶ 8) (Miss.Ct.App.1999). In making our determination, we must view all the evidence in the light most consistent with the jury verdict. Veal v. State, 585 So.2d 693, 695 (Miss.1991). On review, this Court "may not reverse unless it finds there was an abuse of discretion by the lower court in denying the defendant's motion for a new trial." Alexander, 736 So.2d at 1062 (¶ 8). Taking into consideration all the evidence as discussed above, and viewing it in the light consistent with the guilty verdict, this Court finds that the lower court in no way abused its discretion in denying the motion for a new trial. This Court dismisses this assignment of error.

IV. DID THE COURT ERR IN ALLOWING PROSECUTORIAL MISCONDUCT AND IN FAILING TO ADMONISH THE JURY CONCERNING THE PROSECUTOR'S REFERENCE TO THE DEFENDANT AS "A KILLER" DURING CLOSING ARGUMENTS?
¶ 19. During closing arguments, in commenting on the theory of defense that Fair was a victim of circumstances, the prosecutor stated: "That man (pointing to the appellant) is not a victim, he's a killer." Fair's attorney objected, and the court sustained the objection. Fair now contends that although the objection was sustained, the court erred in not admonishing the jury to disregard the comment. Fair asserts that this statement was inflammatory and amounted to prosecutorial misconduct. We find that the trial court did not commit error.
¶ 20. In Weatherspoon v. State, 732 So.2d 158 (Miss.1999), under an almost identical fact pattern, the supreme court articulates the applicable law that bars the assignment of error at present. In Weatherspoon, Weatherspoon asserted that certain comments made by the State during closing arguments were improper because they only appealed to the bias and prejudice of the jury. Id. at 163 (¶ 16). As soon as those comments in question were made, Weatherspoon's attorney objected, and the objection was sustained, just as it was in the case at bar. After the objection was sustained, Weatherspoon did not request that the judge admonish the jury to disregard the comments. It was noted that if such had been done, any possible prejudice would have been cured. However, the supreme court held that "it is incumbent upon counsel to move for a mistrial or ask for an admonishment. For whatever reason, Weatherspoon did not take this next step. We will not reverse the trial court based upon something that it was not asked to do." Id. at (¶ 16) (emphasis added). At present, after Fair's objection was sustained, there was no request for admonishment. We agree with the ruling in Weatherspoon and find that no error was committed.

V. DID THE COURT ERR IN SENTENCING THE DEFENDANT TO LIFE WITHOUT PAROLE IN VIOLATION OF SECTION 99-19-101(2), *794 MISSISSIPPI CODE ANNOTATED (1972)?
¶ 21. After the jury returned the guilty verdict for capital murder, the trial court found that the State had not adequately proved any of the factors required by Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), for imposition of the death penalty. After this finding, the jury was dismissed, and the trial judge sentenced Fair to life without the possibility of parole. Fair argues under this assignment of error that the trial court committed error in imposing life without the possibility of parole, and in doing so without a jury determination as required by Miss.Code Ann. § 99-19-101(2). We find Fair's argument to be without merit for the reasons below.
¶ 22. The Mississippi Supreme Court, in Pham v. State, 716 So.2d 1100 (Miss.1998), declared our standing on this exact issue. In Pham, a jury found defendant Pham guilty of capital murder. The State had waived the death penalty, and then the judge sentenced Pham to life without parole. On appeal, Pham argues that the trial court improperly sentenced him to life without parole in violation of Miss.Code Ann. § 99-19-101, the exact same argument Fair is making at present. In Pham, as in our case, the argument lies in the fact that the judge sentenced the defendant without a jury determination.
¶ 23. The Pham court, in determining the answer to this issue, studied all the applicable statues. Miss.Code Ann. § 99-19-101(1) (Rev.1994) provides in relevant part:
Upon conviction or adjudication of guilt of a defendant of capital murder or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment....
This statute continues in section (2) to state: "After hearing all the evidence, the jury shall deliberate on the following matters...." Miss.Code Ann. § 99-19-101(2) (Rev.1994). Further, Miss.Code Ann. § 97-3-21 (Rev.1994) provides:
Every person who shall be convicted of capital murder shall be sentenced (a) to death; (b) to imprisonment for life in the State Penitentiary without parole; or (c) to imprisonment for life in the State Penitentiary with eligibility for parole as provided in Section 47-7-3(1)(f).
Lastly, Miss.Code Ann. § 47-7-3(1) (Supp. 1999) states:
(e) No person shall be eligible for parole who, on or after July 1, 1994, is charged, tried, convicted and sentenced to life imprisonment without eligibility for parole under the provisions of Section 99-19-101;
(f) No person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment under the provisions of Section 99-19-101.
The supreme court in Pham then held:
Thus, although under the relevant code provisions, while there is the apparent necessity of a choice between death, life, and life without parole, in reality there is really only a choice between death and life without parole in the capital case in this context. Obviously, if the State is not seeking the death penalty, the only possible sentence for conviction of capital murder committed after July 1, 1994, the effective date of § 47-7-3, is life without parole; and, this is the only sentence which the jury could have given Pham. Thus, the question is whether a trial judge may impose the only possible sentence without formally returning the matter to the jury for sentencing. We find that he can.
Pham, 716 So.2d at (¶ 21). Therefore, this Court holds the same.
¶ 24. After review, this Court concludes that the lower court did not commit reversible error and Fair's assignments of error were without merit. Accordingly, we affirm.
*795 ¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.