CARLTON, J.,
for the Court:
¶ 1. Adrian Williard appeals his conviction and sentence for capital murder and aggravated assault from the Hinds County Circuit Court. Williard was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Williard appeals, claiming that the circuit court erred in denying his motion to suppress statements he allegedly made prior to receiving Miranda[1] warnings. Finding no reversible error, we affirm.
*344 FACTS
¶ 2. On March 16, 2008, Officer Samuel Gardner of the Jackson Police Department (JPD) arrested Williard in connection with the stabbing death of Janice Cotton and the alleged kidnapping and aggravated assault of Crystal Latham, Cotton’s daughter.[2]
¶ 3. Responding to call for assistance regarding a possible violent altercation, Officer Gardner arrived at the home of Cotton and Latham in Jackson, Mississippi, in the early morning hours of March 16, 2003. Officer Gardner testified that when he arrived at the crime scene, he saw what appeared to be someone, whom he later identified as Williard, dragging a female, later identified as Latham, across the street. Officer Gardner testified that when he exited his vehicle and attempted to separate Williard from the female, Willi-ard immediately started talking to Officer Gardner and boasting that he harmed two people. Officer Gardner testified that Wil-liard told him “I got two of them.” Officer Gardner proceeded to handcuff Williard and transported him to the downtown headquarters of the JPD, located in the Standard Life Building.
¶ 4. Officer Carolyn Kirkland of the JPD testified that she arrived at the crime scene after Officer Gardner, and she found Latham lying in the street, covered in blood and having difficulty breathing. La-tham was subsequently transported to University Medical Center to receive treatment for her injuries. Upon entering Cotton’s residence, Officer Kirkland found Cotton’s body lying on the floor in the kitchen.
¶ 5. Officer James Roberts of the JPD testified that he proceeded to read Williard his Miranda rights once Williard arrived at the Standard Life Building. Officer Roberts testified that Williard acknowledged his understanding of his rights, and he voluntarily waived them by signing a Miranda waiver form and initialing the line for each of his rights. Officer Roberts also took Williard’s statement, in which Williard admitted to breaking into Cotton’s home, stabbing Cotton, and assaulting La-tham. Williard also admitted that he went to Cotton’s house with the intent to kill Latham, and that he stabbed her in an attempt to kill her.
¶ 6. A Hinds County grand jury indicted Williard for the murder of Cotton and for the kidnapping and aggravated assault of Latham. Prior to the commencement of Williard’s April 10, 2006 trial, the circuit judge held a suppression hearing regarding Williard’s statements to Officer Gardner upon Williard’s arrest. The circuit judge found that Williard had made the statements to Officer Gardner prior to being fully detained, arrested, or handcuffed. The circuit judge also denied Williard’s motion for a directed verdict at the conclusion of the State’s case-in-chief.
¶ 7. Williard testified in his own defense, claiming that Latham stabbed her mother. Williard also claimed that he accidentally stabbed Latham when trying to take the knife away from her.
¶ 8. The jury convicted Williard of capital murder pursuant to Mississippi Code Annotated section 97 — 3—19(2)(e) (Rev. 2006) and aggravated assault under Mississippi Code Annotated section 97-3-7(2) (Supp.2011), but the jury acquitted him of kidnapping. The circuit judge sentenced Williard to life without the possibility of parole for his murder conviction, and to twenty years for aggravated assault, to be *345 served consecutively in the custody of the MDOC.
¶ 9. Williard filed a motion for new trial or, in the alternative, for a judgment notwithstanding the verdict (JNOV), which the circuit judge denied. Willard now appeals, claiming that the circuit judge erred in denying his motion to suppress due to the arresting officer’s failure to give Miranda warnings.
STANDARD OF REVIEW
¶ 10. When this court reviews a trial court’s ruling on a motion to suppress, we must determine whether the trial court’s finding are supported by substantial evidence considering the totality of the circumstances. Reid v. State, 825 So.2d 701, 702 (¶ 5) (Miss.Ct.App.2002); Nicholson v. State, 523 So.2d 68, 71 (Miss.1988) (An appellate court may disturb suppression hearing findings made by the circuit court “only where there is an absence of substantial credible evidence supporting [them].”). The admissibility of evidence lies within the trial court’s discretion and the trial court will only be reversed for an abuse of discretion. Wade v. State, 583 So.2d 965, 967 (Miss.1991); Lewis v. State, 573 So.2d 719, 722 (Miss.1990).
¶ 11. In determining whether a confession was freely and voluntarily given the circuit court sits as the factfinder. The circuit judge first must determine whether the accused has been adequately warned, and, under the totality of circumstances, the court then must determine if the accused voluntarily and intelligently waived his privilege against self-incrimination. McCarty v. State, 554 So.2d 909, 911 (Miss.1989). On the issue of voluntariness, the standard of proof for admissibility is beyond a reasonable doubt. Davis v. State, 551 So.2d 165, 169 (Miss.1989).
DISCUSSION
¶ 12. On appeal, Williard submits that the circuit judge committed reversible error in denying his motion to suppress statements he made after Officer Gardner handcuffed him, because Officer Gardner’s failed to read Williard his rights as required by Miranda, 384 U.S. at 444-45, 86 S.Ct. 1602. Williard contends that he was “in custody,” for the purposes of Miranda, from the moment Officer Gardner arrived at the crime scene and exited his patrol car with his gun drawn and aimed at Willi-ard. Williard claims that as Officer Gardner handcuffed him, Officer Gardner asked why Williard had “done it.” Williard argues that the circuit judge erred in admitting his statements in response to Officer Gardner’s alleged interrogation, and Willi-ard asserts this error requires reversal.
¶ 13. In Miranda, 384 U.S. at 444-45, 86 S.Ct. 1602, the United States Supreme Court established that during a criminal trial:
[T]he prosecution may not use statements, whether exculpatory or incul-patory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement *346 he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.
(Footnote omitted).
¶ 14. The record reflects that at the suppression hearing, Officer Gardner testified that when he arrived at the crime scene after responding to an emergency call, he exited his vehicle and drew his weapon. Officer Gardner testified that Williard raised both of his hands in the air, and Officer Gardner made Williard get on the ground so that Officer Gardner could arrest Williard and put handcuffs on him. Officer Gardner testified that “right off the bat [Williard] confessed.” Officer Gardner explained that immediately after he arrived on the scene, Williard started talking to him about the circumstances surrounding the incident. Williard told Officer Gardner: “I got both of them.” Officer Kirkland, as well as a neighbor who witnessed the violent altercation, testified that Williard began “bragging” about harming the two women and discussing the circumstances regarding the crime once Officer Gardner arrived on the scene. Officer Gardner transported Williard to the JPD for further questioning. He testified that Williard continued to talk incessantly during the car ride, discussing the events and making derogatory and threatening comments about Latham.
¶ 15. However, Williard claims that as Officer Gardner approached him to place him under arrest, Officer Gardner asked him “Why [did] you do that?” At trial, Officer Gardner denied questioning Willi-ard and stated that he instructed Williard to “be quiet.” Officer Gardner also admitted that he did not give Williard his Miranda warnings before transporting him to detectives at the JPD. However, Officer Gardner explained that no reason existed to give Williard his Miranda warnings at that time since Officer Gardner did not intend to, nor did he, question Williard before transporting him to the JPD.
¶ 16. After hearing testimony from both Williard and Officer Gardner, the circuit judge ruled that “the motion to suppress those statements made voluntarily by [Williard] will be denied,” finding “no basis to believe that those responses were invoked or promoted by the officer who had [Williard] in custody.” We again note that admission of testimony is subject only to an abuse-of-discretion review. Tatum v. Barrentine, 797 So.2d 223, 230 (¶ 29) (Miss.2001) (citation omitted).
¶ 17. Williard cites to Carpenter v. State, 910 So.2d 528, 532 (¶ 12) (Miss.2005), in support of his argument that the circuit court incorrectly determined that all statements made after Williard was taken into custody prior to receiving his Miranda warnings were admissible. In Carpenter, the Mississippi Supreme Court reversed and remanded Vernell Carpenter’s conviction for business burglary due to the arresting officer’s testimony regarding statements elicited prior to the *347 Miranda warnings. The circuit judge had earlier determined such statements were inadmissible, finding that once Carpenter was apprehended and handcuffed, Carpenter was in custody, and “such custody triggered Carpenter’s Fifth and Sixth Amendment rights.” Id. at 53B (¶ 17). The supreme court held that “[a]ny information gained from questioning before advising an accused of his Miranda warnings is inadmissible at trial.” Id. However, the State argues that Carpenter is distinguishable from the facts of this case, pointing out that here, credible independent corroboration exists to support Officer Gardner’s testimony that upon his arrival on the scene, Williard spontaneously admitted to killing Cotton and harming Latham.
¶ 18. In Watson v. State, 835 So.2d 112, 118 (¶ 17) (Miss.Ct.App.2003), this Court affirmed the circuit court’s denial of a motion to suppress, finding no reversible error in the circuit court’s determination that the defendant’s incriminating statements were voluntarily made. The Watson court acknowledged that with regard to spontaneous statements:
Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege [against self-incrimination] while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. Volunteered statements of any kind are not barred by the Fifth Amendment.
Id. at (¶ 16) (citing Alexander v. State, 736 So.2d 1058 (¶ 11) (Miss.Ct.App.1999)).
¶ 19. In addition, the Mississippi Supreme Court established that:
[A] confession or statement relating to culpability may be admitted into evidence if it is given freely and voluntarily, and without the influence of promises or threats.... A volunteered statement, voiced without prompting or interrogation, is admissible in evidence if made prior to the warning and of course if it were voluntarily and spontaneously made subsequent to [the Miranda warning], it would remain admissible in evidence. Furthermore, this Court has said an officer is not required to turn a “deaf ear” to such statements. This Court will not reverse a trial court’s finding regarding the admission of a [culpable statement] unless it is manifestly wrong.
Ricks v. State, 611 So.2d 212, 214 (Miss.1992) (internal citations and quotations omitted); see also Stallworth v. State, 797 So.2d 905, 912 (¶ 23) (Miss.2001) (“Volunteered, unprompted statements are admissible, even if the Miranda advice has not been first given.”).
¶ 20. We find that the record contains substantial, credible evidence to support the circuit judge’s determination that no improper questioning by law enforcement occurred, and that Williard voluntarily made the statements to Officer Gardner regarding his guilt without interrogation or coercion. Nicholson, 523 So.2d at 71. We find no abuse of discretion in the circuit court’s denial of Williard’s motion to suppress; therefore, we affirm. See Wade, 583 So.2d at 967. This issue is without merit.
¶ 21. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION; COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORREC *348 TIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.

. Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. In the record, Cotton is alternately referred to as Cotton’s aunt. However, at trial, La-tham identified Cotton as her mother.