803 So.2d 1229 (2002)
PAUL TRIGGS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00525-COA.
Court of Appeals of Mississippi.
January 8, 2002.
*1231 Lisa B. Milner, Jackson, for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and CHANDLER, JJ.
BRIDGES, J., for the Court.
¶ 1. Paul Triggs was indicted in the Circuit Court of the First Judicial District of Hinds County, Mississippi on two counts of aggravated assault and one count of shooting into an occupied dwelling. Following a jury trial, Triggs was found guilty of all crimes as charged and sentenced by the Honorable Tomie T. Green to two sentences of twenty years for the aggravated assault charges and a sentence of ten years for the shooting into an occupied dwelling charge. It was further ordered these sentences were to run concurrently in the custody of the Mississippi Department of Corrections.
¶ 2. Triggs perfected this appeal, citing the following errors for this Court's review:
I. WHETHER THE GUILTY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED TO THE JURY;
*1232 II. WHETHER IT WAS REVERSIBLE ERROR FOR THE TRIAL JUDGE TO FAIL TO INSTRUCT OR OTHERWISE ADMONISH THE JURY CONCERNING PREJUDICIAL EVIDENCE;
III. WHETHER TRIGGS WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL; AND
IV. WHETHER THE STATE'S "SEND A MESSAGE" REQUEST IN THEIR CLOSING ARGUMENT CONSTITUTED REVERSIBLE ERROR.
¶ 3. Finding no error, we affirm.

STATEMENT OF THE FACTS
¶ 4. On the evening of April 4, 1998, shots were fired into an occupied dwelling located on Broad Street in Jackson, Mississippi, within the First Judicial District of Hinds County. These shots hit two people, both of whom were residents of the dwelling. Two eyewitnesses of the attack stated the shots were fired by approximately eight individuals riding by the home in two separate vehicles, one following the other. Two of the individuals were identified and specifically named by the State's eyewitnesses, this appellant, Paul Triggs, and Pierre Smith. A third individual was previously named, but it was later determined to be an incorrect statement.
¶ 5. The eyewitnesses for the State were two young men, Dennis and Glendale McDuffy. These young men are brothers who live at the dwelling in question with their grandparents. The McDuffy brothers were sitting on the front porch of their home as the shooting began. Upon hearing the shots, the young men ran into the house for cover and yelled for the other occupants to get on the floor.
¶ 6. During the course of the shooting, Dennis McDuffy and his elderly grandmother, Mrs. Ella McDuffy, suffered bodily injury from the bullets striking their bodies. Mrs. McDuffy was hit three times, once in the finger, once in the hip and once in the shoulder area which required surgery. It was determined these shots were fired from a high powered rifle. Dennis was hit in the front of his body by buckshot, including the chest area and arm.
¶ 7. In his defense, Triggs produced two alibi witnesses who testified he was present at their home when they heard the shots on the night in question. The jury returned a guilty verdict on all three counts of the indictment. Triggs then filed a motion for judgment notwithstanding the verdict (JNOV) or in the alternative, a new trial, which was denied by the trial judge.

STANDARD OF REVIEW AND LEGAL ANALYSIS

I. WHETHER THE GUILTY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED TO THE JURY
¶ 8. Triggs asserts that the trial court incorrectly denied his motion for JNOV or for a new trial. A motion for JNOV challenges the legal sufficiency of the evidence supporting the guilty verdict. McClain v. State, 625 So.2d 774, 778 (Miss.1993); Butler v. State, 544 So.2d 816, 819 (Miss.1989). A motion for new trial challenges the weight of the evidence. McClain, 625 So.2d at 781.
¶ 9. Our standard for reviewing challenges to convictions based on sufficiency of the evidence is well established. The Mississippi Supreme Court has stated:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant's] guilt must be accepted as true. The prosecution must be given *1233 the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury.
Id. at 778. We reverse when, with respect to an element of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. Id.; Wetz v. State, 503 So.2d 803, 808 (Miss.1987). The standard of review in determining whether a jury verdict is against the overwhelming weight of the evidence is also well settled. "[T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Collins v. State, 757 So.2d 335 (¶ 5) (Miss.Ct.App.2000) (citing Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998)). On review, the State is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." Collins, 757 So.2d at 337(¶ 5) (citing Griffin v. State, 607 So.2d 1197, 1201 (Miss. 1992)). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Collins, 757 So.2d at 337(¶ 5) (quoting Dudley, 719 So.2d at 182).
¶ 10. Triggs argues on appeal that the evidence presented by the State was not sufficient to warrant a guilty verdict. Specifically, he contends that there were material inconsistencies in the testimony of the State's eyewitnesses. Triggs maintains that the State's witnesses were not reliable in their identification because each person only had a brief moment to form an opinion as to who the shooter was. As authority, Triggs relies on Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), citing to five factors for determining the likelihood of misidentification. We find this authority to be inapplicable. The credibility of witnesses and the weight and value of their testimony are to be determined by the jury and the Biggers test should have been presented to the jury at trial. Burrell v. State, 613 So.2d 1186, 1192 (Miss.1993). This Court does not serve as a new jury. We do not reevaluate the evidence and determine what we would have done in the jury's place. As stated in Henson v. Roberts:
The demeanor or bearing, the tone of voice, the attitude and appearance of the witnesses, all are primarily for inspection and review by the jury. The jury not only has the right and duty to determine the truth or falsity of the witnesses, but also has the right to evaluate and determine what portions of the testimony of any witness it will accept or reject; therefore unless it is clear to this Court that the verdict is contrary to the overwhelming weight of the credible testimony, this court will not set aside the verdict of a jury.
Henson v. Roberts, 679 So.2d 1041, 1045 (Miss.1996).
¶ 11. It is apparent from the record that there was abundant evidence presented during trial implicating Triggs's role in the crimes. Accepting as true all evidence favorable to the State, the record shows that Triggs was identified by both eyewitnesses as present and actively shooting toward the occupied dwelling. Although there may have been variations in the witnesses' testimony, it is the jury's duty to resolve any conflicting testimony. When reviewing the evidence in the light consistent with the verdict and giving the State all favorable inferences which may be drawn from the evidence, this Court finds that the verdict was not against the overwhelming weight of the credible testimony. Accordingly, this issue lacks in merit, and the verdict of the jury will not be disturbed.

*1234 II. WHETHER IT WAS REVERSIBLE ERROR FOR THE TRIAL JUDGE TO FAIL TO INSTRUCT OR OTHERWISE ADMONISH THE JURY CONCERNING PREJUDICIAL EVIDENCE
¶ 12. Triggs complains that during his trial Dennis McDuffy made references to a separate shooting into an occupied dwelling allegedly committed by Triggs prior to the shooting in question. The references were elicited by Triggs's counsel during cross-examination of Dennis. The pertinent testimony is as follows:
Defense Counsel (Carter). Have you ever had an altercation with [Triggs] before?
D. McDuffy. Not me.
Q. What you mean byso you never been a part of an altercation with Triggs before this happened?
A. He shot in my other grandmama's house on Valley.
Mr. Carter: Your Honor, may I approach the bench.
The Court: You may. Let me have the jury out for about five minutes.
¶ 13. Triggs argues this testimony was a violation of Rule 404(b) of the Mississippi Rules of Evidence and therefore, the trial judge should have admonished the jury to disregard. Furthermore, Triggs argues this testimony is hearsay. The State maintains that Triggs's counsel cured the defect himself by eliciting further testimony from Dennis that he was not present when this alleged shooting on Valley occurred. Furthermore, Triggs's counsel referred to the alleged incident during his closing statement specifically calling attention to the fact that Dennis was not present when the shooting on Valley occurred.
¶ 14. Triggs invited the testimony by his questioning of Dennis on cross-examination. While Triggs's counsel may not have intended for Dennis to testify that Triggs shot into a different dwelling on some other occasion, he did ask Dennis if he had ever been a part of an altercation with Triggs before the shooting for which Triggs was on trial happened. Dennis answered his question and then Triggs's counsel asked the question again instead of leaving the subject. Generally, an appellant cannot complain of damaging testimony if the testimony is in response to his questions. Hoops v. State, 681 So.2d 521, 528 (Miss.1996). Dennis gave a direct and responsive answer to the first question. Triggs asked the question again and elicited the response and "therefore cannot complain that the answer was one he did not want." Id.
¶ 15. After the objection was made, Triggs requested the trial judge to admonish the jury to disregard. The judge refused, reasoning that further discussion would only draw attention to the situation. The judge did, however, agree to offer some sort of written limiting instruction at the close of evidence.
¶ 16. After the jury returned to the courtroom, Triggs's counsel asked Dennis one more question related to the alleged shooting on Valley. Specifically, "[d]id you see what you claim happened?" Dennis responded "[n]o, sir." This was defense counsel's way of curing the defect of the prior testimony. Additionally, Triggs's counsel returned to the subject again during closing statements. He spoke of the alleged shooting incident, remarked on his emotions that the jury heard such a statement, and then reminded the jury that Dennis was not present to witness the shooting and the statement was "total rumor." Defense counsel used this statement as a furtherance of Triggs's strategic defense of "bad blood" between the McDuffy brothers and Triggs.
¶ 17. If any prejudice existed as a result of Dennis's statement, Triggs's counsel effectively cured it by offering distinguishing *1235 remarks. Furthermore, the trial judge offered to give a limiting instruction concerning prior bad acts of Triggs. However, the record is silent as to Triggs's counsel asking for such instruction during jury instruction deliberations. Defense counsel should have reminded the judge of her offer to give such an instruction. However, the following should be noted. Since the 1995 case of Smith v. State, 656 So.2d 95, 100 (Miss.1995), the Mississippi Supreme Court has required that:
[W]herever 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to MRE 403 balancing analysis and a limiting instruction. The court shall conduct an MRE analysis and, if the evidence passes that hurdle, give a limiting instruction unless the party objecting to the evidence objects to giving the limiting instruction.
Robinson v. State, 735 So.2d 208, 210 (¶ 4) (Miss.1999) (quoting Knowles v. State, 708 So.2d 549, 557 (Miss.1998)).
Thus, when defense counsel objected to the mention of prior crimes, wrongs, or acts, the trial court should have weighed the prejudicial and probative value of that evidence ... Moreover, should such evidence be admitted after the balancing test is performed ..., the trial judge is required to give an appropriate limiting instructionabsent an objection from [the defendant].
Robinson v. State, 735 So.2d at 210(¶ 5).
¶ 18. However, failure to give a limiting instruction sua sponte is not always reversible error. See Webster v. State, 754 So.2d 1232, 1240(¶ 22) (Miss. 2000) (harmless error in light of overwhelming evidence of guilt); Givens v. State, 730 So.2d 81 (¶ 33-37) (Miss.Ct.App. 1999) (where error is harmless in light of the record where a fair minded jury could have arrived at the same verdict without the prior bad act); Moss v. State, 727 So.2d 720, 725-26(¶ 24) (Miss.Ct.App.1998) (where error is harmless in view of the overwhelming weight of the evidence against the defendant).
¶ 19. The Mississippi Supreme Court discussed the distinction between harmless and reversible error in Catholic Diocese of Natchez-Jackson v. Jaquith:
To warrant reversal, two elements must be shown: error, and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final results of the case and works adversely to a substantial right of the party assigning it. Obviously, in order for the rule of harmless error to be called into play in support of a judgment, the judgment must be otherwise supportable, and will be reversed when there is nothing in the pleadings or evidence to support it ...
Catholic Diocese of Natchez v. Jaquith, 224 So.2d 216, 221 (Miss.1969). In the case at bar, the prior bad act was brought out by the defense attorney. Furthermore, this act was continuously referred to by defense counsel and not the prosecution. Also, Triggs's counsel repeatedly used this act to the advantage of Triggs to heighten his defense of the prior "bad blood" between the witnesses and Triggs. If there was any error in failing to issue a specific limiting instruction, it was harmless. The second prong of the "harmless error" test has not been met. This prior bad act was used in the strategic plan of Triggs's trial counsel to establish a valid defense. No injury resulted and thus the error was harmless.
¶ 20. This issue is without merit. There was no reversible error for failing to *1236 issue a specific limiting instruction. This being said, however, a standardized limiting instruction was given to the jury to disregard all evidence which was excluded by the trial judge. Furthermore, the jury was instructed not to infer anything from the rulings by the judge on motions or objections to the evidence.

III. WHETHER TRIGGS WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL
¶ 21. Triggs argues numerous instances of actions or inactions on the part of his trial counsel which he asserts amount to ineffective assistance of counsel. Before we address each issue on its merits, we are compelled to discuss the stringent standard and burden in proving such claims.
¶ 22. The standard for evaluating whether a defendant received effective assistance of trial counsel is established in Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476 (Miss.1984). See also Moody v. State, 644 So.2d 451, 456 (Miss. 1994); McQuarter v. State, 574 So.2d 685, 687 (Miss.1990); Bolton v. State, 734 So.2d 307, 309 (Miss.Ct.App.1999). Triggs must successfully meet both prongs of the Strickland test in order to prevail in his appeal on the matter. Brown v. State, 626 So.2d 114, 115 (Miss.1993). Under Strickland and Stringer, Triggs must show: (1) that trial counsel's performance was deficient, and (2) that trial counsel's deficient performance prejudiced his defense. Stringer, 454 So.2d at 476. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. The defendant bears the burden of demonstrating that both prongs have been met. Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985). Additionally, there is a strong but rebuttable presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic. Craig v. State, 777 So.2d 677(¶ 17) (Miss.Ct.App.2000) (citing Vielee v. State, 653 So.2d 920, 922 (Miss.1995)).
¶ 23. All of this is measured by a totality of the circumstances with the court looking at the overall performance of the counselor. Lawrence v. State, 780 So.2d 652(¶ 28) (Miss.Ct.App.2001) (citing Bolton v. State, 734 So.2d 307, 309 (Miss.Ct.App. 1999)). With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trail strategy." Craig, 777 So.2d at 681(¶ 17) (quoting Scott v. State, 742 So.2d 1190(¶ 14) (Miss.Ct.App.1999)); see also Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984); Cole v. State, 666 So.2d 767, 777 (Miss.1995).

A. Allowance of a law enforcement officer on the jury when counsel had not exhausted all of defendant's preemptory strikes.
¶ 24. Triggs asserts that his trial counsel was ineffective by allowing Ms. Ward on the jury. At the time of trial, Ms. Ward had been with the Department of Public Safety for twenty-eight years and a sworn officer for nineteen years. The State asserts that defense counsel closely examined Ms. Ward, as per his job and dictated in Odom v. State, 355 So.2d 1381, 1383 (Miss.1978), and for whatever reason, chose to keep her as a jury member.
¶ 25. When specifically questioned by defense counsel, Ms. Ward responded that she has "no particular love or love lost for law enforcement." Furthermore, when asked if she could make her decision based on fact and not based on any predisposition, *1237 Ms. Ward answered in the affirmative. As Triggs correctly points out to this Court, there are no hard and fast rules in Mississippi that law enforcement officers or their relatives cannot sit on a jury. Specifically, "this [c]ourt does not hold that a person engaged in law enforcement, or related by blood or marriage to one engaged in law enforcement, should be per se excluded from jury service." Porter v. State, 749 So.2d 250(¶ 19) (Miss.Ct.App. 1999) (quoting Mhoon v. State, 464 So.2d 77, 81 (Miss.1985)).
¶ 26. We rule this argument is without merit. The record clearly states that defense counsel questioned Ms. Ward directly and apparently her answers were adequate enough for defense counsel to keep her as a jury member. This Court determines this behavior is categorized under the ambit of trial strategy and cannot be questioned. It is a well established rule that we give deference to strategic decisions made by counsel. Murray, 736 F.2d at 282.

B. Trial counsel failed to read and review proposed jury instructions provided by the court.

C. Trial counsel failed to draft an alibi instruction.
¶ 27. Triggs asserts his defense counsel was ineffective because he failed to read and review the proposed jury instructions provided by the trial court and he failed to draft an alibi instruction for consideration. The State argues these instructions were handed to the prosecution and the defense just moments before discussions began concerning jury instructions.
¶ 28. However, if defense counsel did not have an opportunity to read and review the proposed instructions, the record clearly states that defense counsel was given an additional opportunity to raise objections the following morning. There was no objection to the instructions made at the trial the day of the discussion or the day after, leading us to determine that defense counsel had no problem with the trial court's instructions. This is trial strategy.
¶ 29. With respect to the alibi instruction, Triggs now argues alibi was his only defense. Consequently, his attorney should have offered an alibi instruction. We would agree with this argument for ineffective assistance if no alibi instruction was given to the jury at all. However, that is simply not the case. As the record states, Judge Green instructed the jury as to alibi. Specifically, the written instruction given to the jury stated:
Alibi is a legal and proper defense in law. The defendant is not required to establish the truth of his alibi to your satisfaction, but if the evidence or lack of evidence in this case raises in the mind of the jury a reasonable doubt as to whether the defendant was present and committed the crime, then you must give him the benefit of the doubt and acquit him.
Duplicated instructions will not be given to the jury and therefore will be refused. Gossett v. State, 660 So.2d 1285, 1295 (Miss.1995).
¶ 30. This Court finds this point to be without merit.

D. Trial counsel elicited prejudicial testimony from Dennis McDuffy.
¶ 31. This point was addressed supra in great detail, but will be touched on again now. Triggs asserts ineffective assistance of counsel for eliciting prejudicial testimony. The State asserts that any prejudicial testimony was cured by the defense counsel when he elicited further testimony from Dennis stating he was not present when the bad act occurred.
*1238 ¶ 32. Arguably, as previously stated, this line of questioning could be considered trial strategy. Defense counsel plainly stated in the record the reasoning behind the questioning was to make the jury aware of the prior altercation and "bad blood" between the witnesses and Triggs. Triggs's attorney specifically stated such in his closing remarks. It is a well established rule that we give deference to strategic decisions made by counsel. Murray, 736 F.2d at 282. This is strategy and warrants no further discussion.

E. Trial counsel failed to investigate the case.
¶ 33. Triggs argues that it was profound error by the defense counsel in failing to investigate and secure a transcript of the previously tried case of Pierre Smith, the co-defendant. Additionally, Triggs argues this failure allowed for inconsistencies in the testimonies of the of the eyewitnesses from one trial to the next. The State rebuts by arguing defense counsel used other forms of investigation for purposes of impeaching the eyewitnesses's testimony. Therefore, there was no error by the defense counsel.
¶ 34. Triggs sets forth several specific points of inconsistency between the testimonies of the McDuffy brothers at Pierre Smith's trial and his. We find this argument without merit. "This Court can act only on the basis of the contents of the official record, as filed after approval by counsel for both parties. It may not act upon statements in briefs or arguments of counsel which are not reflected by the record." Porter v. State, 749 So.2d 250, 256(¶ 18) (Miss.Ct.App.1999).
¶ 35. Triggs's counsel at trial did use inconsistencies of the eyewitnesses to his advantage. He used their prior written statements to impeach their testimony. He further pointed out these inconsistencies to the jury during closing statements. Concerning pre-trial investigation, we rely on the federal court of appeals in Strickland when it stated:
[t]hese standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
Carter v. State, 775 So.2d 91 (¶ 12) (Miss. 1999) (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052).
¶ 36. This Court does not agree that Triggs has met his burden to prove ineffective assistance. Therefore, we find this argument has no merit.

IV. WHETHER THE STATE'S "SEND A MESSAGE" REQUEST IN THEIR CLOSING ARGUMENT CONSTITUTED REVERSIBLE ERROR.
¶ 37. During closing statements, the assistant district attorney made the following statement:
And the State of Mississippi ask you to hold him accountable, hold him accountable for what he's done. You tell him by your verdict we're not going to tolerate you thinking it's okay to get a gun and shoot somebody's house up ... Ladies and gentlemen, you tell him by your *1239 verdict the State of Mississippi is going to hold you accountable for your actions.
¶ 38. No timely objection was made by the defense, so arguably the issue is waived. Payton v. State, 785 So.2d 267, 270(¶ 10) (Miss.1999) (citing Turner v. State, 721 So.2d 642, 646 (Miss.1998)). "However, if the argument is so `inflammatory' that the trial judge should have objected on his own motion the point may be considered." Payton, 785 So.2d at 270(¶ 10) (quoting Gray v. State, 487 So.2d 1304, 1311 (Miss.1986)). Furthermore, a defendant who fails to make a contemporaneous objection to prosecutorial misconduct must rely on plain error to raise the assignment on appeal. Brown v. State, 690 So.2d 276, 297 (Miss.1996); see also Foster v. State, 639 So.2d 1263, 1289 (Miss. 1994) (citing Gray, 487 So.2d at 1312).
¶ 39. The appellate courts of Mississippi have repeatedly condemned the "send a message" argument and warned prosecutors accordingly. Payton, 785 So.2d at 270(¶ 11); see also, Evans v. State, 725 So.2d 613, 675 (Miss.1997); Chase v. State, 699 So.2d 521, 537 (Miss.1997); Wilcher v. State, 697 So.2d 1087, 1112 (Miss.1997); Hunter v. State, 684 So.2d 625, 637 (Miss. 1996); Williams v. State, 522 So.2d 201, 209 (Miss.1988).
¶ 40. The Mississippi Supreme Court explained the problem with the "send a message" argument in Williams:
The jurors are representative of the community in one sense, but they are not to vote in a representative capacity. Each juror is to apply the law to the evidence and vote accordingly. The issue which each juror must resolve is not whether or not he or she wishes to "send a message" but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged. The jury is an arm of the State but it is not an arm of the prosecution. The State includes both the prosecution and the accused. The function of the jury is to weigh the evidence and determine the facts. When the prosecution wishes to send a message they should employ Western Union. Mississippi jurors are not messenger boys.
Williams, 522 So.2d at 209.
¶ 41. The supreme court has not previously held this language standing alone is enough to warrant a per se reversal. However, this Court in 1999, in an effort to force prosecutors to abide by court admonitions, attempted to make a ruling, declaring any "send a message" closing argument by the State would result in reversible error. Alexander v. State, 736 So.2d 1058, 1064(¶ 17) (Miss.Ct.App.1999). The Mississippi Supreme Court did not agree and followed a concurring opinion of Alexander in its ruling of Payton when it stated it declined to adopt the per se reversible error rule on this issue. Payton, 785 So.2d at 271(¶ 14). Instead and in furtherance of the concurring opinion in Alexander, the court stated an appellate review could "determine whether error affected a trial in such a way as to bring its fairness into question." Id. at 271(¶ 13) (quoting Alexander, 736 So.2d at 1065(¶ 21)). Furthermore, the court in Payton agreed with the majority of Alexander and stated a "send a message" closing statement may, "depending upon the surrounding circumstances, constitute reversible error on its own." Payton, 785 So.2d at 271(¶ 14). We agree with the holding of the supreme court in Payton and follow this holding in the case at bar. The lack of a contemporaneous objection by the defense counsel waives this issue because the surrounding circumstances did not warrant a sua sponte response from the bench. This issue is without merit.
¶ 42. Finding all issues to be without merit, this case is affirmed.
*1240 ¶ 43. THE JUDGMENT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I AND II OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS EACH; COUNT III OF SHOOTING A FIREARM INTO AN OCCUPIED DWELLING AND SENTENCE OF TEN YEARS, WITH ALL SENTENCES TO BE SERVED CONCURRENTLY IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER and BRANTLEY, JJ., concur.
IRVING, J., concurs in result only.