918 So.2d 798 (2005)
Marty R. MICHAEL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02647-COA.
Court of Appeals of Mississippi.
June 7, 2005.
*801 William Wayne Housley, Tupelo, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Marty R. Michael (Michael) was tried and convicted in the Circuit Court of Lee County, Mississippi, of rape. He was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections, with five years suspended and five years' post-release supervision and fined $2,000. From his conviction, Michael appeals to this Court raising the following issues which we quote verbatim:
1. Whether Michael was deprived of due process and a right to a fair trial where court did not respond to jurors' question;
2. Whether the trial court erred in overruling the appellant's motion to dismiss the charges or in the alternative a directed verdict;
3. Whether the trial court erred in denying the appellant's motion for directed verdict at close of appellant's case;
4. Whether the evidence was sufficient as a matter of law;
5. Whether the ineffective assistance of counsel was in violation of the sixth and fourteenth amendments of the United States Constitution;
6. The court erred in allowing the state to make a prejudicial reference to prior bad acts in violation of M.R.E. Rule 404; and,
7. The cumulative effect of aforementioned errors greatly prejudiced Michael and rendered fair trial impossible.
Finding no error, we affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. N.T. claimed that she was raped by Michael on April 11, 2002. He was indicted by the Lee County grand jury and subsequently entered a plea of not guilty. His appointed counsel, Kelly Mims, represented Michael at trial on November 12-14, 2003.
¶ 3. Ms. Kathy Jackson was the first to testify. Ms. Jackson related that she was a friend of N.T.'s, and that N.T. had come to her on April 18, 2002 "very upset" and told her she had been raped by Michael. Ms. Jackson testified that she saw bruises on N.T.'s face. Ms. Jackson affirmed that the statement she had given the police of N.T. being raped by Michael was consistent with what N.T. told her, and that N.T.'s account of the rape had not changed over time.
¶ 4. Next, Officer Jeff Penny, a park ranger with the Natchez Trace Parkway, testified that during his April 18, 2002 interview of N.T. she advised him that she had been assaulted and raped. Her statement, which had been reduced to writing by Officer Penny, reported that Michael "struck me on the face and pulled/ripped off my sweat pants and panties and raped me." Officer Penny testified that bruises were visible on N.T.'s neck and face, and *802 he identified the photographs he had taken of N.T.'s facial bruises, which photographs were admitted into evidence. Officer Penny found the bruises to be consistent with N.T.'s statement of being choked and squeezed around her neck.
¶ 5. N.T. testified on her own behalf that Michael raped her. N.T. informed the jury that, although she had previously lived with Michael for about four months, she had broken off their relationship because of his "abuse." N.T. testified that, despite his history of physical abuse, she voluntarily went with Michael in his car on the evening of April 11. The two argued over N.T.'s renewed relationship with the father of her youngest son and her refusal to have sexual relations with Michael "one last time." N.T. testified that while she steadfastly refused to have intercourse with Michael, he attacked her, tore off her sweat pants and panties, and choked her, applying pressure to her head and neck. Although she fought back, N.T. was subdued and eventually raped. N.T. testified that she begged Michael to stop, and warned him she would report his actions to the police. N.T. explained that she did not immediately inform her parents of the rape out of fear and embarrassment. N.T. also testified that Michael subsequently called her on the telephone and threatened to harm her should she inform law enforcement of his actions. N.T. was asked on cross-examination if Michael had struck her before.[1] She responded that Michael did so when he was "smoking, hitting the foil." On redirect, N.T. explained that "hitting the foil" meant smoking crystal methamphetamine.
¶ 6. Michael testified on his own behalf and admitted to having sex with N.T., but believed it was consensual. He admitted to consuming beer, and using marijuana and Xanax prior to having sexual intercourse with N.T. on the night of April 11. Michael admitted that he had a drug problem, but he claimed that N.T. also used drugs and that her claim to the contrary was "about as big a lie as could be told." Michael admitted to "backhand[ing N.T.] in the lip," drawing blood, on the night of April 11, but contended that his hitting her occurred subsequent to their engaging in consensual intercourse. Michael also admitted that he threatened N.T. with violence subsequent to the night of April 11, 2001.
¶ 7. The jury found Michael guilty of rape but was unable to fix the penalty. The trial court sentenced Michael to twenty-five years in the custody of the Mississippi Department of Corrections, with five years suspended and five years post-release supervision. Michael retained new counsel, Roy Farrell, who filed a motion for a JNOV on December 4, 2003. The motion was denied the same day, and Michael filed his notice of appeal to this Court.

I. WAS MICHAEL DEPRIVED OF DUE PROCESS AND A RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT DID NOT RESPOND TO THE JURORS QUESTION?
¶ 8. During jury deliberations, the jury submitted the following note to the trial judge: "If the jury finds the defendant guilty and does not impose a life sentence, what is most likely the sentence that the judge will impose." The judge advised the jury that he could not respond to their inquiry. Michael's trial counsel made no objection to the judge's decision. *803 On appeal, his new counsel contends, without citation of authority, that the court's failure to respond to the jurors' question of "most likely sentence" deprived him of a due process right to a fair trial. As a general rule, this Court will not consider assignments of error which are not supported. Jones v. State, 481 So.2d 798, 804 (Miss.1985) (quoting Harmon v. State, 453 So.2d 710, 712 (Miss.1984)). Further, Michael's trial counsel waived any objection to the trial court's decision by failing to voice objection during the trial. When not objected to during the trial, an error is considered waived. Smith v. State, 530 So.2d 155, 161-62 (Miss.1988); Longmire v. State, 749 So.2d 366, 368(¶ 5) (Miss.Ct.App.1999). Lastly:
The guideline to follow when a jury has a question about a case on which it is deliberating is enunciated in Girton v. State, 446 So.2d 570, 572 (Miss.1984). "Our first recommendation is that the circuit judge determine whether it is necessary to give any further instruction. Unless it is necessary to give another instruction for clarity or to cover an omission, it is necessary that no further instruction be given." Id.

Payton v. State, 897 So.2d 921, 955 (¶ 138) (Miss.2003). After carefully considering the question asked of the trial judge, we are of the opinion that the court did not err in declining to respond. In fact, we do not see how the court could have otherwise responded to the jury's inquiry as to the "most likely sentence" the court would impose. Neither Michael's trial nor appellate counsel has identified how he contends that the trial court should have responded to the jury's request for an advisory opinion. This issue is not only procedurally barred but also without merit.

II. DID THE TRIAL COURT ERR IN OVERRULING THE APPELLANT'S MOTION TO DISMISS THE CHARGES OR IN THE ALTERNATIVE A DIRECTED VERDICT?

III. DID THE TRIAL COURT ERR IN DENYING THE APPELLANT'S MOTION FOR DIRECTED VERDICT AT CLOSE OF APPELLANT'S CASE?
¶ 9. The standard of review for denial of a motion for directed verdict requires that the trial court consider all the evidence in the light most favorable to the State. If the facts and reasonable inferences will support a verdict of guilty, then the directed verdict must be denied. Coulter v. State, 506 So.2d 282, 284 (Miss.1987). In considering a motion to dismiss, the judge should consider "the evidence fairly, as distinguished from in the light most favorable to the plaintiff," and the court should dismiss the case if it would find for the defendant. In re Adoption of D.N.T., 843 So.2d 690, 710-11(¶ 50) (Miss. 2003) (quoting Century 21 Deep S. Props., Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992)). N.T. testified in graphic detail as to the events which lead up to and occurred during her sexual intercourse with Michael on the night of April 11, 2002; although she begged him to stop, Michael attacked N., tore off her clothes, and choked her into submission before having sexual intercourse with her. Michael admitted to drinking beer, smoking marijuana and taking Xanax prior to the sexual intercourse and "backhand[ing N.T.] in the lip" on the night of April 11. Kathy Jackson and Officer Penny testified as to the existence of bruises on N.T. a week later. Officer Penny testified that the bruising on N.T.'s neck and face was consistent with N.T.'s allegations. These facts and reasonable inferences could easily support a guilty verdict against Michael. Thus, we are of the opinion that the lower court was correct in denying the defendant's motions for directed verdict and to dismiss the charge of rape.

*804 IV. WAS THE EVIDENCE SUFFICIENT AS A MATTER OF LAW?
¶ 10. Regarding the sufficiency of the evidence, Michael contends that reasonable doubt existed and a jury could not have convicted him of the rape absent mistake. Michael claims that no reasonable juror could have found him guilty because: (1) the State failed to establish and maintain its burden of proof; (2) the photographs of N.T. admitted into evidence were taken eight days after the alleged crime and N.T.'s testimony was the only evidence supporting the photographs; (3) the sweat pants N.T. was wearing were sent to the crime lab but a report was never rendered and (4) Michael's counsel made assertions regarding Michael's bad acts which were prejudicial. Based upon these allegations, Michael claims that "[t]here are too many questions," and the evidence was insufficient as a matter of law. We disagree.
¶ 11. In McClain v. State, 625 So.2d 774, 778 (Miss.1993), the Mississippi Supreme Court stated that when the sufficiency of the evidence is challenged, the prosecution is entitled to have the evidence in support of its case taken as true together with all reasonable inferences. Any issue related to credibility or the weight of the evidence was for the jury, not this Court, to decide. Gaines v. K-Mart Corp., 860 So.2d 1214, 1217-18 (¶¶ 11-12) (Miss.2003). When the testimony of N.T., Kathy Jackson, and Officer Penny is taken as true, together with reasonable inferences, we find the evidence more than sufficient to support the verdict of guilty.

V. DID MICHAEL RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION?
¶ 12. Michael claims that his trial counsel rendered constitutionally ineffective assistance. This Court presumes counsel to be competent, and Michael has the heavy burden of showing counsel was ineffective under the two part test articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Brooks v. State, 573 So.2d 1350, 1353 (Miss.1990). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Burns v. State, 813 So.2d 668, 673 (Miss.2001) (quoting Strickland, 466 U.S. at 686, 104 S.Ct. 2052). In the instant case, Michael must prove not only that his trial counsel's performance was deficient, but also that the deficiency prejudiced the defense so as to deprive him of a fair trial. The focus of the inquiry is whether counsel's assistance was reasonable considering all the circumstances. Burns, 813 So.2d at 673.
Judicial scrutiny of counsel's performance must be highly deferential. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
Stringer v. State, 454 So.2d 468, 477 (Miss.1984) (citations omitted).
*805 ¶ 13. Michael argues that his court appointed counsel, Mr. Mims, failed to rise to the level of competent counsel in four ways: (1) Mims conceded as to sexual intercourse when physical testing was incomplete and ineffective, (2) Mims failed to object to the photographs of N., which were taken eight days after the incident, (3) Mims' closing argument was ineffective, (4) Mims failed to object timely and effectively to the testimony of prior bad acts. Michael claims that had it not been for Mims' ineffective assistance, the outcome would have been different. With respect to the overall performance of an attorney, "counsel's failure to file certain motions, call certain witnesses, ask certain questions, and make certain objections fall within the ambit of trial strategy.'" Cole v. State, 666 So.2d 767, 777 (Miss.1995). "Decisions of trial strategy are presumed to be reasonable." Burns v. State, 813 So.2d 668, 677 (¶ 14) (Miss.2001). Furthermore, "[h]aving a trial strategy negates an ineffective assistance of counsel claim, regardless of counsel's insufficiencies." Hall v. State, 735 So.2d 1124, 1127 (¶ 10) (Miss.Ct.App.1999).
¶ 14. In the instant case, it appears that Michael's trial counsel had a very definite strategy: admit the sexual encounter, defend on the basis of consent and show N.T.'s motives for fabricating the charge of rape. Counsel voluntarily elicited Michael's "prior bad acts" of physical violence against N.T. in an attempt to establish her vow to make Michael "pay if he ever touched her again." Further, he attempted to prove to the jury that although Michael was not "a nice guy," he was truthful regarding his past misdeeds, and he was speaking the truth as to the issue of consent. On closing argument, Michael's counsel asked the jury:
Why is it that Marty Michael came before you and told you that he had used drugs? Told you that he had done bad things? Why is it that he told you on a previous occasion he had hit [N.T.]? I'll tell you why, ladies and gentlemen, because it is the truth. This man comes before you open and honest, telling you the truth, not what you want to hear, not what's necessarily in his best interest. He comes before you telling you the truth.
Considering all the circumstances of this case, we cannot find that Michael has overcome the presumption of "sound trial strategy" on the part of his trial counsel. The fact that the strategy was unsuccessful does not render counsel's performance ineffective.

VI. DID THE TRIAL COURT ERR BY ALLOWING THE STATE TO MAKE A PREJUDICIAL REFERENCE TO PRIOR BAD ACTS IN VIOLATION OF M.R.E. RULE 404?
¶ 15. Michael asserts that testimony regarding his "prior bad acts" was prejudicial and should not have been allowed under Mississippi Rule of Evidence 404(b).[2] However, Michael fails to identify what portions of the testimony were prejudicial and inadmissable. In attempting to address Michael's issue, we adhere to the principle that the admissibility and relevancy of evidence is within the discretion of the trial court and the trial court's decision will not be disturbed on appeal absent an abuse of that discretion. See Reynolds v. State, 784 So.2d 929, 932 (¶ 7) *806 (Miss.2001). "As long as the trial court remains within the confines of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference." Johnston v. State, 567 So.2d 237, 238 (Miss.1990).
¶ 16. N.T.'s testimony with regard to Michael's prior violent behavior was first elicited on cross-examination as part of a concerted trial strategy. In other words, Michael invited the testimony by his questioning of N.T. See Triggs v. State, 803 So.2d 1229, 1234(¶ 14) (Miss.Ct.App.2002). Generally, an appellant cannot complain of damaging testimony where the testimony is elicited in response to his questions. Id. (citing Hoops v. State, 681 So.2d 521, 528 (Miss.1996)). Michael's attorney asked N.T. whether Michael had struck her before, and she answered, "Yes, sir." N.T. was then asked "what caused it, what did ya'll fight about, and what happened?" N.T. replied that she and Michael normally fought over "him smoking, hitting the foil, or he'd come in and he'd just have in his mind that I had had sex with one of his friends. And he'd just, he'd lose it. He'd blackout. He'd hit me in the face. He'd choke me, and then he wouldn't remember it." When N.T. was asked by the prosecutor on redirect what "hitting the foil" was, she answered, "[s]moking crystal meth." As the supreme court noted in Brown v. State, 495 So.2d 508 (Miss.1986), "The appellant having elicited the testimony on cross-examination, thus inviting the response from the prosecutor, cannot now be heard to complain it was error." Id. at 509 (citing Lewis v. State, 445 So.2d 1387 (Miss.1984); Shelby v. State, 402 So.2d 338 (Miss.1981)).
¶ 17. Furthermore, Michael's own testimony, on both direct and cross-examination, corroborated N.T.'s testimony that Michael was a drug addict and physically abusive. Part of Michael's trial strategy was to admit that he had struck N.T. in the past and that her charge of rape was fabricated in order to make good on her threat to make Michael "pay if he ever touched her again." Having raised the issue, he concurred with the prosecution's assessment on cross-examination that he had "whupped on her pretty good before." He admitted on direct examination to "backhand[ing N.T.] in the lip" on the night of April 11, 2002, giving her reason to make good on her threat to make him "pay." Michael admitted on direct examination that his life with N.T. "pretty much. . . revolved around . . . drugging." This statement was made in an apparent attempt to discredit N.T. as a witness; he called her denial of drug use with him "about as big a lie as one could be told." It thus appears that Michael's testimony and cross-examination of N.T. regarding his prior physical violence and drug use with N.T. were part of his concerted trial strategy. His assignment of error is without merit.

VII. DID THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ASSIGNED ERRORS RENDER A FAIR TRIAL IMPOSSIBLE?
¶ 18. In Coleman v. State, 697 So.2d 777, 787 (Miss.1997), the Mississippi Supreme Court stated that where there were no reversible errors in part, there were no reversible errors in the whole. "This court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal. . . . However, where there was no reversible error in any part, so there is no reversible error to the whole." (quoting McFee v. State, 511 So.2d 130, 136 (Miss.1987)). Michael has failed to establish the existence of errors upon which a claim of cumulative effect can be grounded. Thus, his contention must fail.
*807 ¶ 19. Finding no reversible error in the trial below, we affirm the judgment of the lower circuit court.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF RAPE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE OR EARLY RELEASE, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, PAY A FINE OF $2,000 AND REGISTER AS A SEX OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., concur.
NOTES
[1] Michael's counsel was apparently attempting to elicit an admission from N.T. that she had once vowed that Michael "would pay if he ever touched her again" in order to show that the instant charge of rape was merely N.T.'s following through with her threat. N.T. denied having made such statement.
[2] Mississippi Rule of Evidence 404(b), states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.