CARLTON, J.,
 

 for the Court:
 

 ¶ 1. Leander Smith was convicted in the Quitman County Circuit Court of business burglary. He was sentenced as a habitual offender to seven years in the custody of the Mississippi Department of Corrections (MDOC) under Mississippi Code Annotated section 99-19-81 (Rev.2007).
 

 ¶2. Smith argues on appeal that the trial court erred by allowing testimony regarding a surveillance video of the burglary, in violation of Uniform Rule of Circuit and County Court 9.04. He asks this Court to reverse his conviction and remand his case to the trial court for a new trial. We find no error and affirm Smith’s conviction and sentence.
 

 FACTS
 

 ¶ 3. On January 24, 2008, between approximately 1:30 and 1:45 a.m., the Family Dollar Store in Marks, Mississippi was burglarized. Lena Thomas and Dora Honey, who lived across the street from the store, testified that they heard a knocking sound coming from the direction of the Family Dollar Store. When they looked outside, the women saw someone standing near the shopping baskets outside of the store, and then later they saw someone moving around inside of the store. The women called the police.
 
 [1]
 
 Both Thomas and Honey reported that the person they saw standing outside, and later inside, of the store wore dark clothing.
 

 ¶ 4. Officer Roderick Mabry and Officer Rocky Jaco of the Marks Police Department arrived on the scene within a few minutes of the break-in. Officer Mabry testified that he saw a figure running across the street from the Family Dollar Store. Thomas and Honey pointed to the man crossing the street, whom they identified as the burglar. Officers Mabry and Jaco proceeded to apprehend and arrest Smith. Officer Mabry searched Smith’s clothing and found two black stocking caps
 
 [2]
 
 in the left pocket of his overalls. Officer Mabry also found broken glass on Smith’s clothing.
 

 ¶ 5. Smith faced a jury trial on September 2-4, 2008, in the Quitman County Circuit Court. During the trial, the State disclosed to the court that Family Dollar Store possessed a surveillance video of the burglary, but the State did not possess a copy of the video, since it could not be duplicated or copied onto a videotape. Due to the inability to preserve the video for court, the State assured the court that there would be no testimony about the video, and the parties stipulated that no reference would be made to the video evidence during the trial.
 

 ¶ 6. At trial, Smith testified that he had purchased the two stocking caps from La-Tisha McGee, an employee at the Family Dollar Store, prior to the burglary. The State called McGee to the stand in rebuttal. McGee testified and denied selling Smith any items during the time period in question or on the day of the burglary. She also stated that she knew for certain that Smith had broken into the store. When repeatedly asked by the defense on cross-examination how she knew Smith had committed the burglary, McGee explained that she had seen him on the store’s surveillance video. The defense continued cross-examining McGee with questions about the video, and then the
 
 *680
 
 defense asked the court for' a mistrial based on her responses to the defense’s questions.
 

 ¶ 7. The judge denied the defense’s motion for a mistrial, holding that the circumstances failed to warrant a mistrial, since the State possessed no intent to admit the video as evidence or mention the video at trial. Nonetheless, the defense continued to cross-examine McGee about the video. After hearing testimony from seven witnesses, including Smith, the jury found Smith guilty of burglary of a business. The trial court sentenced Smith to seven years incarceration, as a habitual offender, in the custody of the MDOC. Smith now appeals his conviction and sentence. Finding no error, we affirm.
 

 STANDARD OF REVIEW
 

 ¶ 8. “This Court employs an abuse of discretion standard when reviewing a denial of a motion for mistrial.”
 
 Livingston v. State,
 
 943 So.2d 66, 70 (¶ 8) (Miss.Ct.App.2006). On review, a violation of Rule 9.04 is viewed as “harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.”
 
 Payton v. State,
 
 897 So.2d 921, 942 (¶ 67) (Miss.2003). We also note that “[ujnless a criminal defendant makes a contemporaneous objection to the admission of previously undisclosed evidence, the issue is procedurally barred on appeal.”
 
 Livingston,
 
 943 So.2d at 70 (¶ 8).
 

 DISCUSSION
 

 ¶ 9. Smith argues that under Rule 9.04, non-disclosure of the surveillance video by the State required exclusion of the video. Smith asserts that since the parties had stipulated that there would be no testimony about the video, the circuit court should have granted a mistrial. Rule 9.04 states, in pertinent part, that:
 

 A. Subject to the exceptions of subsection “B,” below, the prosecution must disclose to each defendant or to defendant’s attorney, and permit the defendant or defendant’s attorney to inspect, copy, test, and photograph upon written request and without the necessity of court order the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution:
 

 [[Image here]]
 

 5. Any physical evidence and photographs relevant to the case or which may be offered in evidence....
 

 [[Image here]]
 

 I. If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
 

 If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
 

 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
 

 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant
 
 *681
 
 a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
 

 3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
 

 The court shall follow the same procedure for violation of discovery by the defense.
 

 ¶ 10. Smith submits that the facts of the present case are similar to
 
 Box v. State,
 
 437 So.2d 19, 21-22 (Miss.1983), which the supreme court reversed and remanded because the circuit court allowed in evidence from a material witness, even though the State had failed to disclose the witness until the evening before trial. Smith argues that, like
 
 Box,
 
 this case requires a reversal and a remand for a new trial.
 

 ¶ 11. However, the facts in
 
 Box
 
 are distinguishable from the case before us. In the case now before the court, the defense, and not the State, elicited the objectionable information. In
 
 Box,
 
 the State called Michael Waters, the owner of the automobile allegedly used to carry out a robbery, as a witness at trial.
 
 Box,
 
 437 So.2d at 20. Waters’s name was not disclosed to the defense until the evening before the trial, despite the fact that the State knew eight months ahead of trial that Waters might testify.
 
 Id.
 
 at 21-22. The supreme court, thus, held that the State’s discovery violation warranted a reversal.
 
 Id.
 
 In the present case, however, the State notified the defense before the trial that the surveillance video existed, but that the State had no intention of introducing the video or testimony regarding the video into evidence. Moreover, the Family Dollar Store possessed the video, not the State. Further, the questioning of McGee by the defense, not the State, led to the admission of the testimony regarding the video.
 

 ¶ 12. Smith also cites
 
 Williams v. State,
 
 991 So.2d 593, 600-03 (¶¶ 22-23) (Miss.2008), where the circuit court admitted an audiotape of a 911 telephone call that was not provided to the defense in discovery. The State explained that it received the audiotape the day before the trial.
 
 Id.
 
 at 600 (¶ 23). The circuit court granted Williams forty minutes to review the 911 tape and consult with witnesses.
 
 Id.
 
 at 600 (¶ 22). The
 
 Williams
 
 court ruled that since the 911 tape duplicated other evidence admitted at trial, and since the discovery requirements discussed in
 
 Box
 
 were followed, there was “no unfair surprise.”
 
 Id.
 
 at 601-02 (¶¶ 29-30). Smith argues that in the present case, the
 
 Box
 
 procedure was not followed because the defense did not have an opportunity to review the surveillance video. Smith asserts that he was, therefore, disadvantaged by McGee’s unauthorized testimony. He states that since his counsel never reviewed the video, as in
 
 Williams,
 
 Smith was ultimately not able to cross-examine McGee effectively about a video recording that only she and employees of Family Dollar Store had seen.
 

 ¶ 13. Smith also points to the recent case of
 
 Fulks v. State,
 
 18 So.3d 803, 804 (¶ 3) (Miss.2009), where the State advised defense counsel for the first time on the day before the trial that the key witness would be testifying to a new version of events. Again, Smith overlooks a key distinction in this case — Smith elicited the testimony he now claims was admitted in error, not the State. The supreme court held in
 
 Fulks
 
 that “the State’s eleventh-hour disclosure of the unexpected content of the witness’s testimony produced ... a trial by ambush in which critically important evidence was sprung on a defendant
 
 *682
 
 with such abruptness that defense counsel had time neither to investigate its veracity nor to make meaningful preparation to meet it.”
 
 Id.
 
 at 805 (¶ 8). The court noted that its analysis in
 
 Fulks
 
 depended on the fact that the witness’s revised account amounted to “previously undisclosed evidence.”
 
 Id.
 
 at 806 (¶ 11). The court distinguished that
 
 Fulks,
 
 like
 
 Box:
 

 [did] not present [a] situation[ ] in which, for example, a witness changes his story on the stand. Such a situation might present other problems requiring review; but for purposes of the
 
 Box
 
 rule, such testimony would not amount to “previously undisclosed evidence” because the State would have had no knowledge thereof to disclose.
 

 Id.
 
 at (¶ 11).
 

 ¶ 14. Smith’s argument fails to address facts reflecting that this case falls into the category that the supreme court distinguished from
 
 Fulks
 
 and
 
 Box.
 
 Here, the record reflects that the State learned about the surveillance video from a person who was not even a witness in the case; therefore, the State had no knowledge or reason to suspect that McGee would mention the video. As a result, the State was just as surprised by McGee’s testimony as the defense. Further, the State maintains that it did not possess the surveillance video, since the video could not be copied onto a videotape and admitted into evidence; thus, the State had no intention of mentioning the video at trial. Moreover, in
 
 Fulks,
 
 the State offered the testimony of the objectionable witness. In Smith’s case, however, the State did not seek introduction of admission of the evidence regarding the video.
 

 ¶ 15. The State also points out that McGee’s testimony regarding the surveillance video was elicited by the defense during cross-examination. The defense repeatedly questioned McGee about her certainty regarding the defendant’s role in the burglary, which led McGee to explain that she had seen Smith on the surveillance video:
 

 Q: My question is not whether you sold him anything. My question is simply, are you positive he never came to that store?
 

 A: I’m positive he didn’t come to the store on a day that I worked.
 

 Q: He did not?
 

 A: He didn’t.
 

 Q: How many times have you seen him in the store?
 

 A: Well, I know I have seen him sometimes in the store. During the time after he had broken into the store—
 

 Q: So, so wait a minute. Excuse me. So how do you know he broke into the store or somebody told you that?
 

 A: I saw him on camera.
 

 Q: You saw him on camera?
 

 A: I saw him on camera, yes. One of the workers took me back there and said, what do you see.
 

 Q: And you saw him on camera, right?
 

 A: Like he ran back out the door, going like out the door.
 

 Q: You saw his face?
 

 A: That was him.
 

 Q: And who did you tell that to?
 

 A: Who did I tell that to?
 

 Q: Uh-huh.
 

 A: They was [sic] telling me.
 

 After eliciting this testimony on cross-examination, the defense counsel asked for permission to approach the bench, and in the presence of the jury but out of the hearing of the jury, the defense asked the court to order a mistrial. The court denied this request.
 

 ¶ 16. We find that such testimony constitutes invited error. In
 
 Lane v. State,
 
 
 *683
 
 841 So.2d 1168, 1169 (¶ 19) (Miss.Ct.App.2003), this Court held “that a defendant cannot complain of evidence that he himself introduces by virtue of his own questions.” We noted that: “Objectionable statements are not error if they are the product of direct and cross-examinations by the defense counsel.”
 
 Id.
 

 ¶ 17. In
 
 Triggs v. State,
 
 803 So.2d 1229, 1234 (¶ 12) (Miss.Ct.App.2002), a witness at trial made references to a separate shooting allegedly committed by Paul Triggs that occurred prior to the shooting in question. The references to the prior bad act were made during cross-examination by Triggs’s counsel.
 
 Id.
 
 On appeal, this Court held that “an appellant cannot complain of damaging testimony if the testimony is in response to his questions.”
 
 Id.
 
 at (¶ 14) (citing
 
 Hoops v. State,
 
 681 So.2d 521, 528 (Miss.1996)). The witness gave “a direct and responsive answer” to the question.
 
 Id.
 
 However, the defense asked the question again, which led to the witness’s statement about the prior bad act.
 
 Id.
 
 Since the defense elicited the response through repeated questioning, this Court held that Triggs “cannot complain that the answer was one he did not want.”
 
 Id.
 
 (citation omitted).
 

 ¶ 18. In the case before us, Smith’s counsel elicited McGee’s testimony regarding the surveillance video by repeatedly asking during cross-examination how she knew that Smith had robbed the store. Thus, Smith cannot now complain about McGee’s statement, since he invited the error through his own questioning of the witness. The defense opened the door to testimony about the surveillance -video by asking McGee, an employee of Family Dollar Store, as to how she was sure her memory about Smith committing the burglary was accurate, and she answered. Here, the Family Dollar Store, not the State, possessed the video. The defense was notified of the existence of the video, but still threw open the door.
 

 ¶ 19. The record also reflects that although the court denied Smith’s motion for a mistrial, the court did offer to instruct the jury to disregard all information regarding the video. However, the defense counsel stated that he wanted to continue questioning McGee about the video. In addition, we find that the record reflects that testimony from other witnesses supports Smith’s conviction, including testimony from the police officers who found the stolen stocking caps in Smith’s pocket, as well as testimony from the two eyewitnesses who identified Smith once he was apprehended. We find that this issue is without merit.
 

 ¶ 20. THE JUDGMENT OF THE QUITMAN COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A BUSINESS AND SENTENCE AS A HABITUAL OFFENDER OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO QUITMAN COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The security alarm inside of the store also went off once the windows were broken, alerting the police of the break-in.
 

 [2]
 

 . These caps are also referred to as "skull caps” in the record and briefs.